BREAUX, C. J.
The purpose of plaintiff in instituting this suit was to obtain a judgment setting aside a sale of shares made to Anthony Fabacher by the defendant company.
In order to be able to buy these shares, he (Fabacher) borrowed $25,000 from Mr. Fair-fax, a broker. Plaintiffs allege that it was a loan by the Cobimercial-Germania Trust & Savings Bank, through their agent, Mr. Fairfax.
. Fabacher afterward transferred the shares he bought from the Audubon Hotel Company to this bank as security for the amount which he had borrowed from Fairfax, agent.
They offered to return the shares on receiving the amount which he had paid for them, to wit, $25,000.
The remainder due by Fabacher to the bank in this transaction is $10,000.
He (x\nthony Fabacher) on May 6, 1908, placed his property in the hands of his creditors, represented by plaintiffs as a committee appointed by the creditors to represent their interest.
Plaintiffs’ allegation is that the creditors and Fabacher gave this committee the entire control of his (Fabacher’s) business, and that after full control had been given, and in view of this control, the creditors extended the time of payment of his indebtedness to them.
Plaintiffs allege that the' Commercial-Ger-mania Trust & Savings Bank, creditor of Fabacher for $10,000, is secured by shares of the Audubon Hotel Company, which shares they wish to return, as before mentioned, on receipt of amount paid by their principal, Fabacher, to the hotel company.
On the 20th of November, 1905, Fabacher became the owner of 250 shares of the capital stock of the Audubon Hotel Company, Limited. For the security of the payment of the amount he had borrowed, he transferred at the time these 250 shares of stock as security to the Commercial-Germania Bank for the amount he borrowed to pay for the shares (in part at least), the par value of which, as set out in the charter, was $100 per-share.
The complaint, of plaintiffs is, and this is the ground upon which they have sued: That the hotel company has entirely changed the object and purpose for which it was organized; that. originally, as stated in the charter, the object and purpose was to build and furnish and operate and conduct a hotel; but' that on the 1st day of October, 1908, *789 those who had control of the management of the company, despite the protest of plaintiffs, departed radically from the purpose expressed in the original charter; that the character of the business was changed, other responsibilities added, and other business ventures proposed, with which they did not intend to have anything to do.
The complaint on part of plaintiffs further is: That on the date before mentioned the president of the Audubon Hotel Company directed the amendment of article 1 of the original charter só as to change the name from the Audubon Hotel Company, Limited, to another name indicative of the intention to change the nature of the, business; that the object and controlling purpose of the original incorporation was the erection, furnishing and operating of a hotel; but that the whole and sole object of the new corporation, under the amended charter, is the erection, furnishing, and operation of stores — a different purpose, as plaintiffs allege.
The plaintiffs claim that the departure from the original purpose of the company was sufficiently radical to release Fabaeher from any further obligation, after having returned said shares, and that he has a right to the return of the money he has paid, and to a release from all indebtedness.
Petitioners specially allege and insist that they protested against any change from the original charter. They aver: That the officers, directors, and managers of the Commereial-Germania Trust & Savings Bank were the lenders to Fabaeher, the balance of which loan amounts to the sum alleged; that the money was loaned by this bank through Fairfax to Fabaeher for the purpose of paying the Audubon Hotel Company for the said stock which the Commercial-Germania Trust & Savings Bank held as collateral for said loan; that Fairfax was only the agent of the bank; and that, while it appeared that the loan was made by him, it was, as before stated, by the Commercial-Germania Trust & Savings Bank on account of the Audubon Hotel Company.
With reference to the change made in the origiual charter by its subsequent amendment, as before mentioned, the contention is that by it Fabaeher is released from any obligations on his contract, and that petitioners, representing him as a committee, as above stated, are entitled to recover the money paid by him.
To this petition, the defendant excepted: First, on the ground that the petitioners disclosed no cause or right of action. In a supplemental exception defendant urged that it was entitled to oyer of power of attorney, agreement of contract referred to in the first paragraph of the petition; and, further, that it was entitled to more complete information as to the source of the authorization therein claimed. In the second place, that there had been misjoinder of parties. And, in the third place, plaintiffs had failed to make necessary parties to the suit, in that they had omitted to join Anthony Fabacher, who is a necessary party. Lastly, the exceptor pleaded estoppel by the conduct and the action of Fabaeher, who was, it alleged, present at the meeting referred to in the petition, and voted for the amendment of the charter.
The exception was maintained, and plaintiffs’ demand dismissed.
From that judgment, plaintiffs prosecute this appeal.
There was evidence introduced on the trial of the exception. No objection was urged to its admission. Besides, plaintiff complied with defendant’s prayer for oyer and handed to him a copy of the proceedings of the meeting of the creditors of Fabaeher, on May 6, 1908,. which is before us.
The document signed has important bearing upon the issues. We therefore make note of it here in extenso.
*791 By it the creditors of Eabacher agreed to extend the time of payment of their claims against him three years, “on condition,” as expressed in the agreement, “that five of his creditors shall be elected to carry on, conduct, and control his business.”
On his part, Eabacher agreed to turn over to this committee (the plaintiff) “full control of his business, and to receive a monthly allowance for himself, which shall be fixed by the said committee.”
The committee agreed to pay cash for all business conducted by it, and, after having accumulated a sufficient amount, to prorate and pay the net profits to the creditors.
One member of the committee was to have active charge, and the amounts collected were to be paid in bank subject to check by the committee only.
This agreement was signed by Fabacher, the debtor, and CO-odd creditors consented to it.
It is charged in plaintiff’s petition that defendants were well aware of this agreement at the time that the amendment hereafter noted was made. Defendants were notified that a meeting of the creditors would be held on May 6, 190S. They did not attend the meeting.
After the meeting had been held, each creditor was notified of what had been done. It was stated in the notice to each creditor:
“A great majority of his creditors were present at the meeting, and the result was reached by a unanimous vote.”
The creditors were notified to write out and forward their consent to the agreement made by the committee and plaintiffs with Eabacher.
The charter of the Audubon Hotel Company, Ltd., was annexed to and made part of the petition.
A notarial act, also made part of the petition, shows, as declared by Mr. W. Mason Smith, president of the company, that on the 1st day of October, following a general meeting of the stockholders, called for the purpose, decided to amend the charter, as made evident by a copy of the amendment before us. A meeting was held and authorized the president to sign all necessary proceedings in matter of this amendment.
The amendment changed the name of the corporation from Audubon Hotel Company, Ltd., to Audubon Building Company, Ltd.
Under the first charter the company was authorized to- “purchase,' lease or otherwise acquire for cash, or on terms of credit, real estate in New Orleans or elsewhere; to erect thereon a hotel or ^other buildings; to equip and furnish the same; to conduct, manage and operate or lease a hotel or hotels with furniture and appliances thereon, restaurants, cafés, barrooms, theaters, places of amusement and entertainment, and generally to do and perform any and all things pertinent and germane to the power herein granted.”
While the amendment, before noted, provides that the authority of the corporation is to buy, lease real estate, and erect thereon stores, office buildings, hotels, or other buildings, to equip and furnish the same, to conduct, manage, and operate, or to lease stores, office buildings, and hotels, or hotels with furniture and appliances thereon, restaurants, cafés, barrooms, theaters, places of amusement or entertainment, and generally to do and perform all things pertinent and germane to the powers herein granted.
The contention of plaintiff at this point is that the purpose of the corporation, as set out in the amendment, is different from the purpose expressed in the original charter, and that as the agreement was a contract between the shareholders and the company, and that as the contract has been radically-changed, they (plaintiffs), representing the creditors, are not bound by the purchase made by Eabacher of these shares, and that conditions *793 should be reinstated to the extent possible, and the shares returned to the company, and the payments made by Fabacher should be set aside, and the defendant company condemned to pay the amount received.
Fabacher, the debtor, who, by the way, was not made a party defendant in this suit, attended the meeting before mentioned, held to amend the charter of the Audubon Hotel Company, Limited. He was, as before stated, a shareholder of that company, and in that capacity he was present and took part in the proceedings, even to the extent of moving the adoption of the amendment. The amendment received his unqualified and expressed approval in open meeting. The charter contains provisions that the transfer of shares is not binding before registry of stock in books of company.
We have stated substantially that the issues are before us on an exception. The facts before noted are taken as correct for the decision.
No question but that the charter was amended as contended for by plaintiff committee. The effect of that amendment is a very important issue of the case.
If the issues were limited to the one question — whether the amendment consisted of such a change that it had the effect of releasing the shareholders who did not consent to the change — the issues -would be much less •complicated; but there are other questions which present themselves for decision.
In the first place, the contention is that Fabacher, the debtor, consented to the amendment, and that he is concluded by his consent.
From that point of view, considered in the light that he did consent to the amendment, lie is unquestionably bound and cannot now be heard to raise the objection that the amendment was a radical change.
One must be held bound by his own deliberate act. A stockholder who actively engages in organizing a corporation takes part in particular proceedings, and cannot question their regularity. Noyes on Intercorporate Relations, § 45.
He openly acted, as we have before stated, and is barred from urging the objection here urged. Purdy’s Beach on Corporations, vol. 1, § 94.
Further, the following is the expression of Cook on Corporations (5th Ed.) vol. 2, § 502:
“A stockholder may be estopped from objecting to an amendment if he actively favors it and takes part in having it adopted.”
But the committee (the plaintiffs) urge that they are not bound by Fabacher’s approval of the amendment; that, after having placed them in possession of his property, he was without right to consent to the amendment of the Audubon Hotel charter.
That would have very great force and would be controlling were it not that it does not sufficiently appear that Fabacher transferred the shares in said hotel company with authority to institute the present suit.
The debtor, Fabacher, did not deliver the shares he owns in the Audubon Hotel Company, Ltd. He transferred his business in such terms as to lead, as we think, to the inference that he meant to transfer his restaurant business. On reading the written agreement, one infers that the business in which he was engaged was meant — that was the restaurant business.
The limited conditions, under which the committee took charge, as shown by the minutes of the meeting held, at which it was agreed that the committee would act for the creditors, and as shown by the written agreement subsequently signed, give rise to that opinion.
They were to -make him a monthly allowance. Besides, they were to deal in cash in conducting the business, and they were to make payment to the creditors from the net proceeds.
*795 This does not appear to include the shares of stock as transferred to the committee for it to institute suit.
The proceedings, which preceded the agreement, show that the creditors met to consider the financial condition of the business, and arranged for him (Fabacher) to turn over the right and control of the restaurant business to a committee of five. Under the circumstances, the proceedings of that meeting may be consulted and determine the extent of plaintiff’s authority.
While the expressions of the agreement itself are not very specific, taken as a whole— the testimony, the proceedings and the agreement — we arrive at the conclusion that the important question was the management of the restaurant, and that at most the transfer made of the shares to the creditors affected only those who took part in the proceedings ; and even as to these it does not appear that the committee was authorized .to sue.
The defendants, we repeat, were not parties to the agreement authorizing plaintiffs to act for Fabacher, the common debtor.
The next proposition of learned counsel for plaintiffs is that the representatives of the Audubon I-Iotel Company are bound by their knowledge of the transfer made by the debt- or, Fabacher, to his creditors, represented by the committee before mentioned.
That knowledge does not affect the issues.
The debtor not having specially transferred the shares, and not having authorized the creditors, through their committee, to bring the suit before us, the plaintiffs cannot stand in judgment.
The shares in question figure in the report of the expert employed to examine into and make report of the business as the resources upon which calculations were based, and they formed part of the consideration; but, in transferring these shares and placing them in the control and management of the committee, there was nothing said about authority to institute the suit here instituted. No. authority was given in that respect. The authority to sue is special and must be expressed.
Plaintiffs’ learned counsel finds authority to sue and maintain this action in the similarity there is between a private agreement between a debtor and some of his creditors and those insolvency proceedings which may. be taken in court when the debtor is greatly embarrassed in his finances.
The parallel is not entirely complete between the administration of a committee and a syndic. It does not extend as far as contended for by plaintiffs.
If Fabacher personally had authorized the committee to sue for the amount claimed and to dissolve and set aside the contractual relations existing between himself and the hotel company, Ltd., as a shareholder of the-latter corporation, the right of the committee to stand in judgment would not exist. For reasons before stated, he is completely estopped. They, for those reasons, do not have the authority to exert the personal right of Fabacher to the shares he holds, being a committee with no further power than they have.
The syndic, who is the representative of the creditors, might, for he is authorized by statute. It is entirely different with him; but the committee does not have the authority of syndic. It therefore, as .relates to said shares, cannot sue creditors who were not parties to the agreement in question. No transfer of the shares to affect them. . The committee cannot sue and hold a creditor bound who never appeared nor took part in any of the proceedings, and never consented to the surrender of the property made by the principal.
These shares, it must be borne in mind, are still registered on the books of the company as owned by Anthony Fabacher. When' *797 he appeared at the meeting of the Audubon Hotel Company, he was the registered owner of these shares, and the Audubon Hotel Company could well presume that he was still the owner and had authority to act, despite the fact that he had arrived at an agreement with plaintiffs whereby his property was to be administered for the benefit of his creditors by them.
This view disposes of the case. Still, going a step further, we are of the opinion, it may be stated, that there was not a radical departure from the purpose of the original charter. A change in the name of the corporation, which we have noted in the statement of facts, is not material. The change in purpose is not indicative of an entirely new purpose. The purpose in the charter was not limited to the Audubon Hotel Company, Limited. It went further, and made provision for other buildings in such terms as not to confine the purpose of the corporation exclusively to a hotel enterprise. The erection of other buildings was possible under the original charter. In the amendment of the original charter, the purpose has been extended, but not radically changed from the purpose expressed in the charter. Reading the two together — the power clause of the original charter and of the amendment —they are reconcilable and harmonized as being in nature germane. The amendment only enlarged the power somewhat. One power did not exclude the other, nor did the amendment have the effect of injecting into the enterprise a power entirely different and foreign from the first.
But going back to the first proposition, and without dwelling further upon the last, we have not found it possible for this committee to stand in judgment in this suit. The plaintiffs are concluded by the participation of the principal in the meeting which adopted the amendment.
We do not consider it necessary to decide other points presented. Those passed upon dispose of the case.
For reasons assigned, the judgment of the district court is affirmed.
PROVOSTY, J., concurs in the decree.