(58 South. 563.)

No. 18,977.

FAIRFAX v. BLOCH.

(May 6, 1912.)

*(Syllabus by the Court.)*

1. CORPORATIONS (§ 84*) — AMENDMENT OF CHARTER — RELEASE OF STOCK SUBSCRIPTION.

The change or amendment of a charter which is authorized by the terms of the charter will not have the effect of releasing a subscriber for stock of the corporation. Casanas v. Audubon Hotel Co., 124 La. 786, 50 South. 714.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 296–327; Dec. Dig. § 84.*]

2. CORPORATIONS (§ 95*)—SUBSCRIPTION TO STOCK—ISSUANCE OF CERTIFICATE.

A receipt for subscription for stock issued by an authorized agent while the corporation is in process of organization has the same effect as a certificate of stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 436; Dec. Dig. § 95.*]

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by John W. Fairfax against Charles W. Bloch. Judgment for plaintiff, and defendant appeals. Affirmed.

E. A. O'Sullivan, for appellant. Merrick, Lewis, Gensler & Schwarz, for appellee.

SOMMERVILLE, J. Plaintiff sues on a promissory note, and defendant resists on the ground of want of consideration. Defendant alleges that he subscribed for 25 shares of the stock of the Audubon Hotel Company, Limited, for which he paid $250 in cash, and gave his note herein sued upon for $2,250. That plaintiff, together with other of the stockholders and directors of the Audubon Hotel Company, Limited, have, without defendant's knowledge or consent, and in violation of law, changed the name of the corporation to the Audubon Building Company, Limited, and that they have changed, or have sought to change, the objects and purposes of said corporation, which changes were most radical and illegal, and that such action has had the effect of releasing him from his obligation and entitles him to the return of the note sued upon and all money paid by him to the plaintiff.

[1] The charter of the company, article 7, provides that, "This act of incorporation may be changed, modified or amended, and this corporation may be dissolved with the assent of three-fourths of the capital stock represented at a general meeting of stockholders called for that purpose after a ten days notice in a daily newspaper published in the English language in the city of New Orleans." The record shows that a notice in conformity to said article was published in the papers as directed. It also shows that a meeting of the stockholders was held in accordance with said notice, and that three-fourths of the stock represented at said meeting voted in the affirmative for the following amendments to the charter: That the name of the association be changed to the Audubon Building Company, Limited, and "that the objects and purposes for which said corporation is organized, and the nature of the

business to be carried on by it, are declared to be: To purchase, lease, or otherwise acquire for cash or on terms of credit, real estate in the city of New Orleans, or elsewhere, to erect thereon stores, office buildings, hotels or other buildings, to equip and furnish same; conduct, manage and operate, or to lease stores, office buildings, hotel or hotels, with furniture and appliances thereon, restaurants, cafés, bar-rooms, theatres, places of amusement and entertainments, and generally, to do and perform any and all things pertinent and germane to the powers herein granted."

In the case of Casanas v. Audubon Building Co., 124 La. 797, 50 South. 714, where this same charter was under consideration, we held that there was not a radical or fundamental departure from the purposes of the original charter in the amendment just referred to. For the reasons therein stated, we hold to that opinion now. These changes were made December 5, 1908, and defendant kept quiet, except to pay the annual interest on his note, until he was sued on that note December 22, 1910. It has been five years since he acquired his stock, or receipt for his stock. The evidence shows that he has paid interest on his note up to and including the year 1909.

[2] Defendant contends that he never received any certificate of stock from the Audubon Hotel Company, Limited. This was his own fault; he held the receipt for the subscription which he made; he pledged it to plaintiff as security for his note, and, on surrendering the receipt, the certificate of stock would doubtless have been issued to him. He was satisfied with the issuance of this receipt, and acted thereon by pledging it to plaintiff and by paying the interest regularly on his note as it fell due. There was nothing irregular in the issuance of this receipt to the defendant. It is the course pursued in the organization of enterprises generally.

Defendant says that he did not know that the object of the corporation had been changed from running a hotel to that of constructing an office building. This change was made in September, 1908; he had notice of the meeting, and he should have informed himself, and acted in such way as seemed proper and expedient to protect his interests: if he did not intend to abide by the decision of the majority at that meeting. He cannot be heard at this late day, after paying interest regularly on his note through these years, to say that he was opposed to the change in the charter, or that he does not want stock of the Audubon Building Company, Limited.

Defendant next makes the point that in accordance with the charter, after $1,000,000 worth of stock had been subscribed, the remaining $500,000 of stock should have been disposed of by the board of directors, and that this evidently had not been done, and therefore the vote of stock at the meeting when the charter was amended was not a vote of valid stock, and that the action at that meeting was illegal, and the amendments not properly adopted. He quotes authorities to show that after a corporation has become a going concern all stock should be issued by the board of directors. But there is nothing in this record to show that the Audubon Hotel Company, Limited, was a going concern at the time that the amendment of the charter was effected. The charter provided that "this corporation may become a going concern and may commence business when $1,000,000 of its capital stock shall have been subscribed"; the charter does not declare the corporation to be a going concern when $1,000,000 worth of stock shall have been subscribed for. The board of directors therefore had the right to dispose of the

LEVY v. DEPOSITO

stock itself, or through the assistance of a broker. And stock issued in this way was valid stock, and it was properly voted on at the meeting referred to.

There is no error in the judgment appealed from, and it is affirmed.